901 P.2d 1210

**STATE of Arizona, Appellee,**

v.

**Ingmar Rolf EKMANIS, Appellant.**

**No. 1 CA–CR 92–1455.**

Court of Appeals of Arizona,
Division 1, Department B.

April 6, 1995.

Review Denied Sept. 12, 1995.

would be retained. For the sake of simplicity, however, I refer to the DNA "sample."

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, and Galen H. Wilkes, Asst. Atty. Gen., Criminal Appeals Section, Phoenix, for appellee.

John M. Antieau, Phoenix, for appellant.

## OPINION

NOYES, Judge.

While burglarizing the storage room of a patio home in central Phoenix, Ingmar Ekmanis ("Appellant") was shot by the homeowner. The issues on appeal are whether the trial court properly instructed the jury on second degree burglary (residential structure) and whether it properly refused to instruct the jury on third degree burglary (nonresidential structure). We affirm.

Appellant's testimony, in brief, was that he had run out of gas on his way home from the pool hall, so he gathered some items from his truck—a lock pick, a tension bar, a scratch awl, and a flashlight—and walked into a residential area to find a gas can. He jumped the six-foot wall surrounding a patio home, went to the storage room, picked the door lock, and entered. When he heard someone behind him, he turned around and was immediately shot. He fell down and said, "No! Don't shoot!" He was then shot again.

The homeowner's testimony, in brief, was that he was awake in bed at about 4 a.m. when he noticed someone peer into the bedroom through the arcadia door, then move away. The homeowner picked up his .357 magnum and told his girlfriend to get ready to call 911. He put on levis and went through the darkened home, looking out the windows. When he saw the open door to the storage room, he went out the kitchen door and entered the storage room, where he saw Appellant at the far end, with his back to the door. The homeowner said "Halt!" and Appellant turned and lunged forward with something in his right hand. Fearing for his life, the homeowner fired three times. Appellant fell down and said "Help me. I know I deserved it, but help me."

The jury acquitted Appellant of an aggravated assault charge that was based on his alleged lunge at the homeowner, so we discuss that charge no further. The jury found Appellant guilty of second degree burglary (residential structure), and the trial court sentenced him to a 13.25 year prison term, the presumptive sentence for a Class 3 felony with two prior felony convictions, increased by two years because the burglary was committed while Appellant was on pre-trial release regarding other charges. *See* Ariz.Rev. Stat.Ann. ("A.R.S.") § 13–604(M) (1989).

That Appellant committed burglary is not in dispute. The question is whether he committed second degree burglary (residential structure), a Class 3 felony in violation of A.R.S. section 13–1507 (1989), or whether the jury could have found that he committed the lesser offense of third degree burglary (nonresidential structure), a Class 4 felony in violation of A.R.S. section 13–1506 (1989). The answer depends on the evidence regarding this patio home.

The home was essentially a two-part structure: one part was the storage room, the other part was the living quarters, and both parts were under one roof. The storage room had four walls and a locking door, it was a built-in part of the patio home, and it had the same construction and exterior treatment as the living quarters. The storage room measured six by eleven feet and contained tools, hardware, and a cabinet. To go from the living quarters to the storage room required stepping outside the living quarters, crossing a walkway, and entering the storage room. There was a gate across the walkway that, when shut, closed the opening between the storage room and the living quarters and prevented passage from the carport to the backyard.

Appellant requested a lesser included offense instruction, arguing that the jury could find that the storage room was a nonresidential structure because it was separated from

the house by a walkway and did not share a common entrance with the house. The trial court refused the instruction, relying on *State v. Engram,* 171 Ariz. 363, 831 P.2d 362 (App.1991), which stated: "In *State v. McDonald,* 70 Ariz.Adv.Rep. 54, 1990 WL 139445 (Ct.App. Sept. 25, 1990), Division Two of this court held that nonresidential burglary is not a lesser included offense of residential burglary." *Id.* at 366, 831 P.2d at 365. The problem with relying on *Engram* is that *Engram* relied solely on *McDonald,* which was depublished by order of the Arizona Supreme Court dated March 19, 1991. *Id.* at 368, 831 P.2d at 367. A depublished case cannot be "regarded as precedent nor cited ..." Ariz.R.Supreme Ct. 111(c).

■ We need not decide whether nonresidential burglary can be a lesser included offense of residential burglary. That question is moot in light of the evidence in this case. For reasons discussed below, we hold that the evidence supports only the conclusion that the storage room was part of the residential structure and, for that reason, Appellant was not entitled to an instruction on nonresidential burglary. *See State v. Atwood,* 171 Ariz. 576, 628–29, 832 P.2d 593, 645–46 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993) (not error to refuse a lesser included offense instruction unless the evidence supports it); *see also People v. Melendez,* 148 A.D.2d 964, 539 N.Y.S.2d 201, 202 (1989) (not error to refuse to instruct on lesser included offense because no reasonable view of evidence could support finding that building entered by defendant was not dwelling); *People v. Sheirod,* 124 A.D.2d 14, 510 N.Y.S.2d 945 (1987) (same).

Appellant also argues that the trial court gave an erroneous definition of "residence" in the following instruction:

The crime of burglary in the second degree requires proof of the following two things:

1. The defendant entered or remained unlawfully in or on a residential structure; and

2. The defendant did so with the intent to commit any theft or felony therein.

....

The term "residence" as it is used in the statute includes everything connected with the residential structure to make it more suitable, comfortable or enjoyable for human occupancy. The definition of residence includes other structures within the residence, including those used for storage.

The complained-of instruction took the elements of the offense from A.R.S. section 13–1507 and the definition of "residence" from *State v. Gardella,* 156 Ariz. 340, 342, 751 P.2d 1000, 1002 (App.1988). Appellant argues that he "was not charged with violating the dicta of *Gardella,* but with violating the terms of a statute, A.R.S. § 13–1507." We certainly agree, but we find no error in the instruction (although "everything" in the *Gardella* definition means "every structure," and it would be clearer to say it that way).

Appellant argues that *Gardella* is inconsistent with A.R.S. sections 13–1501(7) and (8) (Supp.1994). Section 13–1501(7) defines "residential structure" as:

any structure, movable or immovable, permanent or temporary, adapted for both human residence and lodging, whether occupied or not.

Section 13–1501(8) defines "structure" as:

any building, object, vehicle, railroad car or place with sides and a floor, separately securable from any other structure attached to it and used for lodging, business, transportation, recreation or storage.

We find no conflict between *Gardella* and the statutory definitions of "structure" and "residential structure." *Gardella* held that, "In summary, and in general, the entry into a lesser included structure of a residence is always a burglary of a residential structure ..." 156 Ariz. at 342, 751 P.2d at 1002. We find this "lesser included structure" concept a reasonable and necessary interpretation of the Arizona burglary statutes, which do not specifically address the concept. *Gardella* is also consistent with other states' interpretations of their burglary statutes.

Washington, New Mexico, and Colorado residential burglary statutes have been interpreted to include a "portion" or "part" of living quarters, such as rooms that are "con-

tiguous to and a functioning part of the residence," *State v. Lara,* 92 N.M. 274, 587 P.2d 52, 53 (App.1978), an attached garage that was part of the residential "building" (because it was "incidental to and part of the habitation uses of the residence itself,"), *People v. Jiminez,* 651 P.2d 395, 396 (Colo.1982), and an attached garage that was "a 'portion' of a building used as lodging," *State v. Murbach,* 68 Wash.App. 509, 1041, 843 P.2d 551, 553 (1993).

The Indiana Court of Appeals found a basement to be part of the dwelling house, even though it was accessible only by an exterior entrance. *Burgett v. State,* 161 Ind. App. 157, 314 N.E.2d 799, 803 (1974). *Burgett* explained that Indiana case law followed the "unit" concept of a dwelling house, i.e., it included "all portions of the residential structure ... possessed by and within the 'range of sentiment and feeling' of the persons residing therein." *Id.* 314 N.E.2d at 802 (citation omitted).

An Oregon defendant argued that a garage was not a dwelling for purposes of a first degree burglary prosecution. *State v. Haas,* 13 Or.App. 368, 510 P.2d 852, 853 & n. 3 (1973), *rev'd on other grounds,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). The Oregon Court of Appeals found that the garage was "neither a separate structure nor a separate unit ... [but] was under the same roof as the rest of the dwelling[,] was surrounded on three sides by [occupied] rooms[,] ... [and] was structurally no different than any other room in the house." *Id.* at 854; *see also State v. Parker,* 501 S.W.2d 3, 5 (Mo.1973) ("basement utilities' room, included under the same roof, though without internal communication, is part of the dwelling house within [statutory definition because] joined to, or immediately connected [with the dwelling house].") (citation omitted).

A recent Arizona case holds that the definition of "residence" in the assault statutes includes an attached garage with a door connecting it to the living quarters because the garage "[was] such an integral part of the family sanctuary that it qualifies for the protection of the aggravated assault statute." *State v. Browning,* 175 Ariz. 236, 237, 854 P.2d 1222, 1223 (App.1993). The *Browning*

court rejected the defendant's argument that he had not committed an aggravated assault because the assault was in a garage, not in a private home. *Id.* The court explained that it drew support from *Gardella. Id.*

Finding the aforementioned authorities persuasive, we conclude that, just as an attached garage or a basement is a lesser included structure of a residential structure, so is the storage room in this case. Because a lesser included structure is part of the residential structure, the jury was properly instructed on burglary of a residential structure, and the trial court did not err in refusing to instruct on burglary of a nonresidential structure.

■ Appellant also complains on appeal about the "reasonable doubt" instruction, but that claim was waived by failure to present it to the trial court. *See* Arizona Rules of Criminal Procedure 21.3(c); *State v. West,* 176 Ariz. 432, 444, 862 P.2d 192, 204 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994); *State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991).

We have reviewed the record for fundamental error and have found none. The conviction and sentence are affirmed.

KLEINSCHMIDT, P.J., and GRANT, J., concur.