NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CECIL LESLIE BRUNO, *Appellant*.

No. 1 CA-CR 17-0078
FILED 12-12-2017

Appeal from the Superior Court in Yavapai County
No. V1300CR201680037
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B. N. Garcia
*Counsel for Appellee*

Law Office of David G. Bednar, Flagstaff
By David G. Bednar
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**W I N T H R O P**, Presiding Judge:

¶1        Cecil Leslie Bruno ("Bruno") appeals his conviction and sentence for first-degree burglary.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Early in the morning on January 17, 2016, Camp Verde officers responded to a 911 call.  When the first officer arrived at the scene he met Bruno's ex-girlfriend, Sandra,[1] and Bruno's cousin, Jason, outside a trailer.  Sandra had gone out with Jason the evening of January 16, 2016, and returned with him to his mother's trailer, which was located at the end of his mother's driveway.[2]

¶3        Sandra and Jason had been asleep in the trailer when they heard a scuffling noise and then heard Bruno yell, "[d]on't move, don't move, don't move or I'll shoot."  Sandra and Jason sat up, discovered Bruno was inside the trailer armed with a shotgun, and tried to calm him down.  Unable to do so, Sandra wrestled the shotgun away from Bruno, left the trailer, and called 911.  When Sandra grabbed the shotgun, Jason grabbed Bruno around the neck.  Jason stayed in the trailer, restraining Bruno, until he heard police sirens.  Jason then got dressed and left the trailer.

¶4        When the officers arrived at the scene, they commanded Bruno to exit the trailer.  Bruno eventually complied with the officers' commands and was taken into custody.

¶5        On January 22, 2016, Bruno was indicted on six counts: (1) first-degree burglary, a class 2 dangerous felony; (2) aggravated assault per domestic violence, a class 3 felony; (3) aggravated assault per domestic

---

[1]        Bruno and Sandra had a brief romantic relationship in 2014, and then lived together as roommates.

[2]        Jason did not live in the trailer, but his mother allowed him to occasionally stay there.

violence, a class 3 felony; (4) aggravated assault, a class 3 felony; (5) threatening or intimidating per domestic violence, a class 1 misdemeanor; and (6) threatening or intimidating, a class 1 misdemeanor. Before trial the court granted the State's motion to dismiss counts five and six with prejudice.

¶6 At trial Jason described the trailer as fifteen to sixteen feet long with three beds, and stated its main purpose was for sleeping. In addition to the beds, the trailer had a kitchen, bathroom, closet, and refrigerator. The State introduced into evidence a photograph of the trailer's interior, which partially shows the bed and kitchen area. Jason also testified that the trailer was his mother's, and that Bruno did not have permission to enter the trailer that evening.[3]

¶7 At the close of the State's case, Bruno moved under Arizona Rule of Criminal Procedure 20 ("Rule 20") for judgment of acquittal on count 1, first-degree burglary.[4] The court denied Bruno's motion, and after deliberation, the jury found Bruno guilty on all counts. The court then sentenced Bruno to seven years' imprisonment for first-degree burglary with fifty-three days pre-incarceration credit.[5]

¶8 Bruno filed a timely notice of appeal. We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 13-4031 (2010), and 13-4033(A) (2010).

---

[3]     Jason testified that he was unsure whether the trailer was locked that night; however, that does not change the analysis of whether Bruno's actions constituted an unlawful entry.

[4]     On appeal, Bruno does not argue there was insufficient evidence that he intended to commit a felony; instead he argues the State failed to provide substantial evidence that he entered the trailer unlawfully and that the trailer is a residential structure. Bruno also moved for a directed verdict on counts two, three, and four; however, Bruno appeals only the denial of the Rule 20 motion for count one.

[5]     Bruno was also sentenced to five years' imprisonment for counts two, three, and four to run concurrent with his sentence for count one. On appeal, he does not challenge any of the other convictions.

**ANALYSIS**

**¶9**     On appeal, Bruno argues the trial court erred by denying his Rule 20 motion for acquittal of first-degree burglary.

**¶10**     We review *de novo* the trial court's denial of a Rule 20 motion for judgment of acquittal. *State v. Parker*, 231 Ariz. 391, 407, ¶ 69 (2013). *See also State v. Bible*, 175 Ariz. 549, 595 (1993) ("We conduct a de novo review of the trial court's decision" of whether to grant a motion for acquittal.). A judgment of acquittal is appropriate only if no substantial evidence exists to warrant a conviction. *State v. Fulminante*, 193 Ariz. 485, 493, ¶ 24 (1999). "Substantial evidence is 'such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *Parker*, 231 Ariz. at 407, ¶ 70 (citing *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011)). We will reverse the trial court's denial of a motion for judgment of acquittal and the jury's guilty verdict only where "there is a complete absence of probative facts to support" the conviction. *State v. Johnson*, 215 Ariz. 28, 29, ¶ 2 (App. 2007) (quoting *State v. Mauro*, 159 Ariz. 186, 206 (1988)).

**¶11**     Pursuant to A.R.S. § 13-1508(A), "[a] person commits burglary in the first degree if such person or an accomplice violates the provisions of either section 13-1506 or 13-1507 and knowingly possesses explosives, a deadly weapon or a dangerous instrument in the course of committing any theft or any felony." A.R.S. § 13-1508(A) (2010). A person commits a burglary under A.R.S. § 13-1507(A) "by entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or any felony therein." A.R.S. § 13-1507(A) (2010). As alleged here, the State was required to offer evidence that Bruno intended to commit aggravated assault by "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury,"[6] A.R.S. § 13-1203(A)(2) (2010), by using "a deadly weapon or dangerous instrument." A.R.S. § 13-1204(A)(2) (Supp. 2016).

**¶12**     Bruno presents two arguments that the State did not present sufficient evidence to convict him of first-degree burglary. First, he argues there was insufficient evidence that he "enter[ed] or remain[ed] unlawfully" in the trailer. *See* A.R.S. § 13-1507(A). Second, he contends

---

[6]     The State also charged Bruno with aggravated assault based on "[i]ntentionally, knowingly or recklessly causing any physical injury to another person." A.R.S. § 13-1203(A)(1).

there was insufficient evidence that the trailer was a residential structure for purposes of A.R.S. § 13-1507(A).

### I. Unlawfully Entering or Remaining in a Structure

¶13 Contrary to common law, burglary under A.R.S. § 13-1507(A) does not require breaking and entering a structure, but only that a person unlawfully enter or remain in a structure. An unlawful entry occurs when a person intentionally enters or remains in a structure where he "is not licensed, authorized or otherwise privileged" to be. A.R.S. § 13-1501(2) (Supp. 2016). Further, an unlawful entry may occur when a person has permission to enter a structure, but such entry goes beyond the scope of the permission granted. *See State v. Van Dyke*, 127 Ariz. 335, 336-37 (1980).

¶14 Here, Jason's testimony provided substantial evidence on which the jury could find Bruno did not have permission to enter the trailer. Jason testified that he had permission from his mother to use the trailer, but that he did not give Bruno permission to enter the trailer. Nothing in the record suggests that Jason's mother gave Bruno permission to enter the trailer. However, even if Jason's mother gave Bruno permission to enter the trailer, there was substantial evidence from which a jury could conclude that Bruno unlawfully exceeded the scope of that permission by entering the trailer early in the morning, armed with a shotgun, while Sandra and Jason were sleeping.

### II. Residential Structure

¶15 A residential structure is "any structure, movable or immovable, permanent or temporary, that is adapted for both human residence and lodging whether occupied or not." A.R.S. § 13-1501(11). *See, e.g., State v. Engram*, 171 Ariz. 363, 366 (App. 1991) (finding that an apartment building with only one unit leased that is undergoing renovation may be considered a residential structure).

¶16 The State presented substantial evidence at trial from which a jury could conclude that the trailer was a residential structure.[7] Jason

---

[7] Relying on *State v. Bass*, 184 Ariz. 543 (App. 1995), Bruno argues the State presented insufficient evidence to convict him of burglary pursuant to A.R.S. § 13-1507 because it failed to prove the trailer had plumbing and electricity, which he contends is necessary for a structure to be considered "residential" under A.R.S. § 13-1501(11). Bruno's reliance on *State v. Bass* is inapposite, however, because although *State v. Bass* discussed whether a

testified that he occasionally slept in the trailer, and both Jason and Sandra testified that they slept in the trailer on January 16, 2016. Further, Jason testified that the trailer had multiple beds, a kitchen, and a bathroom. The State also submitted into evidence a photograph of the trailer's interior showing the sleeping and kitchen areas.

**¶17**    Based on the testimony and the admitted exhibits, a reasonable jury could have found the trailer was a residential structure, and that Bruno unlawfully entered the trailer or unlawfully remained in the trailer. Thus, the State presented substantial evidence to support the jury's verdict, and the trial court properly denied Bruno's Rule 20 motion for acquittal.

## CONCLUSION

**¶18**    Bruno's conviction and sentence are affirmed.



cabin that was under construction, had not yet been certified for occupancy, and had no working plumbing or electricity could be considered a "residential structure," it ultimately decided that was a question for the jury to determine. *Id.* at 544-45.